UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CARLTON VOSE,<br>    Plaintiff,<br><br>v.<br><br>CITY OF PAWWTUCKET; RICHARD J. GOLDSTEIN, in his capacity as City Clerk for the City of Pawtucket; CHRISTOPHER DUPONT, individually and in his capacity as a police officer employed by the City of Pawtucket; CRAIG LETOURNEAU, individually and in his capacity as a police officer employed by the City of Pawtucket; JESS VENTURI, individually and in his capacity as a police officer employed by the City of Pawtucket; PETER GRAHAM, in his individual capacity; and PAUL KING individually and in his capacity as a police chief employed by the City of Pawtucket,<br>    Defendants. | C.A. No. 18-620-JJM-PAS |

## ORDER

Carlton Vose sued the City of Pawtucket, three of its police officers, the Chief of Police, and the City Clerk. He also sued Peter Graham, an investigator in the Protective Services and Elder Justice Division of the Rhode Island Division of Elderly Affairs.[1] Mr. Graham moves to dismiss the Amended Complaint. ECF No. 21.

---

[1] Now known as the Rhode Island Office of Healthy Aging.

Mr. Vose brings nine claims in his Amended Complaint, only four of which apply to Defendant Graham: False Arrest and False Imprisonment in violation of the Fourth Amendment (Count One); False Arrest and False Imprisonment in Violation of the Rhode Island Constitution (Count Two); Malicious Prosecution in Violation of the Fourth, Fifth and Fourteenth Amendments (Count Three); Malicious Prosecution (Count Five); and Civil Conspiracy (Count Six). ECF No. 8 at 15-18, ¶¶ 81-89.

*FACTS*

This action arises from interactions between the City of Pawtucket Police Department and Mr. Vose and his elderly mother, Pauline Vose ("Ms. Vose"). ECF No. 8. Because of Ms. Vose's declining health, Mr. Vose returned to his hometown of Pawtucket to care for his mother. *See id.* at 5, ¶ 23-25. Ms. Vose, unable to drive, often walked around town. *Id.* at ¶ 25. Starting in 2014, neighbors began contacting the police, reporting Ms. Vose's conduct of asking "strange questions of the neighbors" while walking around town. *Id.* at ¶ 26. Ms. Vose was in the initial stages of dementia. *Id.* Mr. Vose spoke to the police about his mother's issues and her fervent desire to remain independent. *Id.* at ¶ 27. The police officers requested that Mr. Vose keep his mother on the property where they both lived. *Id.* Ms. Vose did not comply with the request and continued to wander around town. *Id.* at 5-6, ¶ 27-28.

A pattern continued over time with the police having contact with Mr. Vose about his mother's safety and well-being. Ms. Vose was admitted to Roger Williams Geriatric Psychiatric Ward for memory testing. *Id.* at 7, ¶ 35. After some time there,

the hospital released Ms. Vose, but the pattern with the local police continued. *Id.* at ¶¶ 35-36.

The police then took Ms. Vose to a psychiatric hospital where she was involuntarily committed. *Id.* at 8, ¶ 37. The hospital determined that after the Rhode Island Division of Elderly Affairs ("RIDEA") performed an evaluation, she could return home. *Id.* The RIDEA conducted the assessment and determined that Ms. Vose could return to her home. *Id.* at ¶ 38. Ms. Vose's doctor suggested that Ms. Vose's habit of walking around the neighborhood could be beneficial for her dementia if she had a GPS device placed on her keys for her safety. *Id.* at ¶¶ 39-40. Despite their knowledge of the decisions reached by the hospital and RIDEA, the police continued their habit of picking up Ms. Vose and taking her to a hospital. *Id.* at ¶ 41.

Mr. Vose filed a complaint with the Pawtucket Police, alleging that the police were harassing his mother and requested that the police leave her alone in the future. *Id.* at 9, ¶ 45. It is at this point that Defendant Peter Graham appears on the scene. Several days after Mr. Vose filed his complaint with the police, Mr. Graham, an employee with RIDEA, contacted Mr. Vose and informed him that the Pawtucket Police Chief Paul King had "'begged' [Mr. Graham] to do something about [his] mother" because the police were "getting calls about her every day." *Id.* at ¶ 46. Mr. Graham and Mr. Vose then set a meeting to discuss a "plan of care" for Ms. Vose. *Id.* at 10, ¶ 48. On the day of the meeting, Mr. Vose was unable to get out of work, so he requested that they meet by telephone rather than in person. *Id.* Mr. Graham told

3

Mr. Vose that the meeting needed to be in person. *Id.* Despite assurances that he would call Mr. Vose back, Mr. Graham did not do so. *Id.*

Three days after his conversation with Mr. Graham, the Pawtucket Police arrested Mr. Vose for abuse/neglect of an impaired person, specifically for "refusing to allow necessary agencies to implement a Case Management Plan to provide for health and physical safety of a person." *Id.* at 11, ¶ 58 and at 13, ¶ 66. Mr. Vose insists that it was Mr. Graham who "refused."[2] *Id.* at 13, ¶ 67.

## *ANALYSIS*

Mr. Graham makes three arguments in favor of his Motion to Dismiss: first, the facts alleged are insufficient; second, if found sufficient, qualified immunity protects Mr. Graham; and third, *Younger* abstention applies. ECF No. 21 at 3. Because the Court finds the facts alleged are insufficient, it does not reach the questions of qualified immunity or *Younger* abstention.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And the court must review the facts as true and in the light most favorable to the plaintiff. *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009) (citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008)). That said, conclusory statements of the law are "not entitled the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Finally, to

---

[2] The Court notes, however, that there was a mere three days between phone call and arrest. To presume that lack of a return call in such a short time period constitutes a refusal is unfounded.

4

grant the motion to dismiss, the pleadings must "show[] no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957)).

All the allegations against Mr. Graham appear under the heading "Civil Conspiracy" in the complaint. ECF No. 8 at 17, ¶ 86. The only facts in support of this civil conspiracy by Mr. Graham involve two telephone calls. *See id.* at 9-10, ¶¶ 48-49. In Rhode Island, "[t]o prove a civil conspiracy, plaintiffs [must] show evidence of an unlawful enterprise." *Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 840 A.2d 1099, 1102 (R.I. 2004) (citing *ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997)). Civil conspiracy also requires the presence of "the specific intent to do something illegal or tortious." *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000). Finally, because civil conspiracy is not itself an independent basis for liability, but is a way to establish joint liability, it "requires a valid underlying intentional tort theory." *Read & Lundy*, 840 A.2d at 1102 (citing *Guilbeault*, 84 F. Supp. 2d at 268).

Mr. Vose has only pleaded threadbare facts to support his allegations against Mr. Graham. Several phone calls do not a conspiracy make. There simply are not enough facts alleged to support a "specific intent to do something illegal or tortious" as required. *See Guilbeault*, 84 F. Supp. 2d at 268.

Even if the Court were to find enough facts to support the civil conspiracy claim, the facts alleged fall short of the necessary plausibility standard. The logical jump required to connect the phone calls between Mr. Vose and Mr. Graham and the

5

conclusion that Mr. Graham was part of a conspiracy with police officers is far too large. No facts point to any motivation for Mr. Graham and his connection to the case is tenuous at best. There are not enough facts, nor are there any plausible facts to allow this matter to continue against him based on the Amended Complaint.

The Court GRANTS Defendant Peter Graham's Motion to Dismiss the Amended Complaint against him. ECF No. 21.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

July 19, 2019